## JOHN BRITTON V. FRANK H. GRANGER.

**1.** EVIDENCE OF PROBABLE CAUSE.

Where a police officer arrests a person without a warrant, the arrest being upon view, and the accused is afterwards acquitted and then brings an action against such officer for an undue assault made upon him and for false imprisonment and malicious prosecution such officer should be allowed to testify to the fact that to his knowledge. and prior to the arrest there had been some person or persons prowling about the houses in his neighborhood and peering into windows and that such persons acted as the accused was acting at the time of his arrest, as such evidence goes to show the exercise of probable cause by the officer in making the arrest.

**2.** EVIDENCE OF BAD CHARACTER.

A person who causes the arrest of another may sh    the bad character of the person arrested.   Such evidence goes to show the likelihood that the accused committed the crime, as a person of bad character is more likely to commit a crime than a person of good character.

**3.** WHAT CONSTITUTES PROBABLE CAUSE.

To constitute probable cause so as to warrant the arrest of a person for the commission of a crime there must be such circumstances and surrounding facts as will lead a person of ordinary prudence to believe in the guilt of the person arrested, and if the facts show that to be the case, then there is probable cause for the arrest.

**4.** OFFICER MAKING ARREST PROCURING THE ADVICE OF AN ATTORNEY BEFORE FILING AFFIDAVIT—EFFECT.

Where an officer finds one violating a law or ordinance, and then and there arrests him and thereafter files an affidavit charging him with the offense he was found committing, the prosecution begins with the filing of the affidavit, and does not begin with the arrest, and if such officer before making the affidavit takes the advice of an attorney-at-law, upon full and fair disclosure of the facts, and follows his advice in making an affidavit, and prosecuting the person so charged, the officer is entitled to the benefit of such consultation and advice, in determining whether he had reasonable or probable cause for the prosecution.

CALDWELL, J.

Britton is a police officer and arrested Granger in his own yard and without a warrant, the arrest being upon view.   The facts as established on the evidence below are stated in a bill, and I will read them :

" Upon the trial there was evidence introduced tending to prove that on the 2d day of May, 1894, the defendant was a police officer of the city of Cleveland, and resided with his family on Willson Place in said city ; that there was then in force in said city the section of the ordinance of said city numbered 661, and copied in the answer herein ; that on said day, and between 9 and 10 o'clock P. M., the defendant's daughter, Mary, standing at the front gate of defendant's premises, saw plaintiff pass by,

Britton v. Granger.

and in fifteen or twenty minutes she saw him again approaching from the same direction, and apparently unbuttoning his pantaloons; that she became frightened and went into the house, and reported to her mother; that the mother then said to this defendant, who was then disrobed and about to go to bed. 'That man we call the "sneak" is in the yard again; he had his hand on the gate coming in when Mary ran to the door;' that defendant thereupon hurriedly dressed himself and went out, found plaintiff in the yard with pantaloons unbuttoned, when defendant seized and arrested plaintiff and took him to the nearest police station, where he was imprisoned until 3 o'clock of the same night, when he was released on bail; that when Mary Britton so ran into the house and reported to her mother, she went upstairs where she and her sister looked from a front window and saw plaintiff standing in the yard, with his pantaloons unbuttoned, and he was staring into the windows of the house."

"Thereupon, in the course of the direct examination of defendant, his counsel asked him this question:

"'Now, Mr. Britton, you may state whether or not, immediately prior to this trouble you had with Granger you have spoken of, and for some time prior thereto, there had been, to your knowledge, any person or persons prowling about the houses in that community, that neighborhood, and peering into windows?'

"Which question was objected to; and the objection sustained; to which ruling the defendant, by his counsel, then and there excepted. And counsel for the defendant then and there stated that they expected the answer to said question to be, that for some time prior thereto, persons had been so prowling about at night, peering into windows, and sometimes accosting and insulting women and girls; that such persons were commonly called, in that community, 'the sneak;' that general excitement and fear prevailed in the neighborhood, on account thereof; that frequent mention of the matter had been made in the newspapers of the city; and that this defendant had repeatedly been importuned to apprehend the person or persons committing the acts aforesaid."

Granger was arrested, gave bail, afterwards an affidavit was filed, and he was put to trial and was acquitted; and he brings this action for an undue assault upon him by the officer, injuries he received in the arrest, and for false imprisonment and malicious prosecution; and the evidence offered on behalf of the defendant, or the tendency of it, is as I have read from the bill. And then this question was asked that I have read. This question involves the question whether it is proper to bring into the case on behalf of Britton, the police officer, testimony of this rumor that existed in the neighborhood, or the fact that someone in the neighborhood had been prowling about and acting as this person had on this occasion, and that he had been insulting women and girls, and peering into the houses, and that Britton knew this fact, and that he had been told that a person named "the sneak," and so known in the community, was in the yard again, and that he had his hand on the gate, coming in, when Mary ran into the house, and that when the police officer went out to arrest him, as appeared here in evidence, that the man was there peering into the windows, and his pantaloons were unbuttoned in part. Now this was offered to show the probable cause; that the officer when he made the arrest had probable cause for making it; and it was objected to on the ground that it was not proper to bring it into the case to establish probable cause. The proof, in the first place, devolves

upon the plaintiff in the action upon malicious prosecution to establish the want of probable cause.   It is a negative; and, being a negative, the proof is not required to be so positive and certain as it would if it was an affirmative, in order that the plaintiff may make out his case in regard to the question of probable cause, which is one of the things that he must prove.   The acquittal is not sufficient to show want of probable cause, because the guilt or innocence of the accused is not the equivalent of the want of probable cause.   The party may be guilty or may not be guilty; and while he may not be guilty, there may have been probable cause; yet guilt established in the courts does establish probable cause; but if he is found not guilty, it does not establish a want of probable cause; and the very reason· for it is that there may be things known to the officer which would be entirely improper to introduce in the evidence to show guilt.   For instance, that a person tried for horse stealing, has stolen other horses; except to show guilty knowledge, it would not be proper to introduce that upon the trial; yet if that was known to the person who caused the arrest or made the arrest, it is, I think, entirely proper that it should be introduced in evidence.   This is established by the courts at the present time.

Again, as to character; if the person arrested is of bad character, the time was when all the courts said that his bad character could not be proven to show that there was probable cause; but at the present day the courts quite unanimously agree that the person who causes the arrest may show the character of the person, to show the likelihood that he committed the crime, because there is much more likelihood that a person of bad character committed the crime, than a person of good character, and this would be an influence brought upon the mind of the person who made the arrest.   The rule is thoroughly established as to what constitutes probable cause; and the courts quite unanimously agree upon this, although there is a difference as to some minor questions.   But the courts quite unaimously agree that it is one of belief.   If the person causing the arrest believes, that is regarded as essential in many courts; and yet some courts hold that it is not necessary that the prosecutor should actually believe, if he has reasonable ground for an ordinarily prudent person to believe—one that would convince the mind of a person of ordinary prudence to believe in the guilt of the party arrested—that is sufficient, whether the prosecutor actually believes it or not.   But that is not the general rule.   The general rule is, in substance, that it must be such circumstances and surrounding facts as will lead a person of ordinary prudence to believe in the guilt of the person arrested; and if the facts show that to be the case, then there is probable cause for the arrest.   The facts proved are found by the jury, where they are in dispute.   As to whether these facts constitute probable cause, is a question for the court to determine.   It is quite the general rule that the mere belief on the part of the person making the arrest is not sufficient; but it must be something that is of that reasonable certainty, that will convince the ordinary mind ·of the guilt of the person; and I suppose the ground upon which this testimony was rejected is that there had been a person acting the way this person had been acting in that community; and to connect those acts of some unknown person with this person, is a leap over a chasm which the courts will not permit.   That is, it becomes a guess—becomes a mere · suspicion—a mere surmise; and the facts are not so related logically to each other as to induce the ordinary mind to believe in the guilt.   Horses have been stolen in a community, and a certain person is seen in the at-

Britton v. Granger.

titude of doing a like act again, or he is seen where suspicion might arise, yet there might be other facts that would clear all these things away, yet he is arrested. Now, the officer knowing these horses to have been stolen, should it have any influence on his mind in making the arrest? Is that a fact that should be admitted? The purpose of all courts in determining every case is, to get at all the facts that actually existed in the case, and all the facts that were known especially to the prosecutor or the person making the arrest at the time the arrest was made. What was in his mind to influence him; and some things that were in his mind might be too remote to be introduced, and yet sometimes sufficient to form a probable cause, a proper form of reasoning, such as persons of ordinarily prudent minds would be likely to form. A person who sits down and deliberately makes a charge against another, is required to look into all the facts that exist in his mind to some extent. If he has heard rumors, he cannot act entirely upon these rumors, but must investigate as to their truth or falsity. If he is without certain facts, it is important that he should look to some extent; but if the police officer arrested upon view, or even upon a warrant—but still more so upon view, because that is the only circumstance that would warrant a discussion of these facts in the case—if the police officer arrested upon view, he cannot proceed in the examination of the facts that appeared in his mind at the time he makes the arrest, but must proceed hastily, without investigation, or nine times out of ten he would lose the prisoner. That is a circumstance; and then many courts have discussed another feature of this—that even where facts are brought to the notice of the person who institutes the prosecution, that person is acting under more or less excitement, and should not be held rigidly to the rule that would govern people who sit down and deliberately think about the matter after it is all over, and who have no connection with the case whatever. In getting at this matter, we conclude that the facts undertaken to be shown here were of such a character, that they were properly taken into consideration by the officer who made the arrest, that some person had been thus prowling around, some person had been acting as this person was then acting; and that being the case, we think that the testimony was improperly ruled out, and should have been admitted, and that it was error on the part of the court below

One other error was assigned upon the said trial. There was evidence introduced tending to prove that, after the arrest, imprisonment, and discharge as aforesaid, and before making any formal legal charge against plaintiff, the defendant consulted with Judge Fiedler, a duly licensed practitioner of the law, and at that time police prosecutor of the city of Cleveland; that upon such consultation defendant made to Judge Fiedler a full and fair disclosure of all the facts known to him in the case; and that Judge Fiedler then and there, and upon the facts so disclosed, advised defendant that the plaintiff was guilty of disorderly conduct in violation of said section of the said ordinance, and advised the defendant to prosecute plaintiff for such offense; that Judge Fiedler then prepared for defendant the affidavit charging plaintiff as complained of in this amended petition; and that all that defendant thereafter did or caused to be done in the matter of the prosecution of said amended petition complained of, he did pursuant to the said advice of said Judge Fiedler. Thereupon, this request was made by the defendant below, the plaintiff in error here.

"Where an officer finds one violating a law or ordinance, and then and there arrests him, and thereafter files affidavit charging him with the

offense he was found committing, the *prosecution* begins with the filing of the affidavit, and not with the arrest; and if such officer before making the affidavit, takes the advice of an attorney-at-law, upon full and fair disclosure of the facts, and follows his advice in making an affidavit, and prosecuting the person so charged, the officer is entitled to the benefit of such consultation and advice, in determining whether he had reasonable or probable cause for the prosecution.

" Applying this rule to this case, if the evidence shows that after the arrest, but before making the affidavit, the defendant consulted Judge Fiedler, laid before him fully and fairly all the facts in his possession, and then followed his advice in filing the affidavit and prosecuting the case, such consultation and such counsel are circumstantial evidence that tends to show probable cause and want of malice, and you should so consider them."

The court refused to charge the jury as requested, and that was excepted to. And then the court said to the jury :

" Testimony has been offered tending to show that before filing the affidavit upon which this prosecution in the police court was conducted, the officer stated to the prosecuting attorney of the police court the circumstances and facts of which he had knowledge and upon which this charge was to be made, if one was made, in the form of an affidavit or warrant. In other words, he claims to have laid before the prosecuting attorney all the facts regarding the transaction. And it is claimed that thereupon he was advised by counsel that the statements and facts so made known to the attorney were sufficient to justify the prosecution, and that the prosecuting officer advised it—advised the carrying forward of the prosecution."

" In a word, this defendant claims to have acted upon the advice of counsel. Confessedly this advice was not sought until after the arrest was made. The arrest was made upon the 2nd of May. The affidavit offered in evidence was sworn to on the 9th day of May, 1894, some days after the arrest. The court holds that, under the circumstances, advice sought or advice of counsel given in pursuance of information given to counsel, cannot amount to complete justification of the defendant in this action."

That was not asked,—that last proposition as to complete justification. It only asks that it may be taken into consideration in determining whether or not there was probable cause, and whether or not there was malice. The court continued :

"Let me state the general rule. If one has a complaint against another ; if one seeks the arrest of another, and before causing the arrest of another, he goes to an attorney-at-law, one duly admitted to practice law in Ohio, and lays before him all the facts of which he has knowledge, conceals nothing, states every fact of which he has knowledge bearing upon the case, and upon that statement his counsel advises him that he has a good complaint, that he has just cause for making a complaint and reason for the arrest of the party, that constitutes a complete defense to him against a subsequent charge of malicious prosecution. That is, if he has acted upon that information, is advised that the facts justify the complaint, he is not liable in an action for malicious prosecution. To make such a defense available, however, it must appear that the party making the complaint concealed nothing, told everything of which he had knowledge, reported the facts truthfully and in no way misled his advisor or caused him to make a statement based upon facts

that were not true as he believed them to be true. Now, as I say, it is claimed in this action that the defendant told the prosecuting attorney all the facts of which h had knowledge, and the prosecutor advised the filing of the affidavit, or advised him that the fact justified the filing of the complaint. As I have already stated, this advice was sought and given some days after the arrest of the plaintiff and his detention in the police station, some days after he gave bail for his subsequent appearance in court.

"The court is of the opinion, and so instructs the jury, that under the circumstances, even though he gave to the officer all the facts of which he had knowledge, that cannot, in view of the time it was given to him, constitute a complete defense to this second cause of action ; but that it is a circumstance which the jury may consider as bearing upon the motive by which Britton was actuated, as tending to show the absence of knowledge—as tending to show his acting in good faith; and you may consider that testimony for whatever you regard it worth, as bearing upon the question whether or not he acted from honest and right motives in doing as he did."

As to this tending to show he acted in good faith—good faith is not the equivalent of probable cause, nor is it so treated by the authorities. "For whatever you regard it worth, as bearing upon the question whether or not he acted from honest and right motives in doing as he did." Now that is not the equivalent of probable cause at all. "Whether or not he acted without malice, or acted in good faith, having only in mind the observance of the law, and the vindication of the law and the punishment of violators of the law. You may examine that testimony and consider it in your finding as tending to show absence of malice in his instituting this prosecution." The court confines it to showing the absence of malice in his instituting this prosecution.

The court then says: First—That Britton going to the attorney, who happened at that time to be the prosecutor, that if he went after the arrest was made, but before the prosecution was commenced, it could be no ground whatever to show the want of malice, nor could it show probable cause ; and in giving the rule, the general rule, the court has not in language wholly stated to the jury that it was sufficient to show probable cause, even if the advice had been given before the arrest, and everything revealed.

The whole question here probably turns upon the line that is undertaken to be drawn between that of the arrest and that of what is strictly called the prosecution. We have in the books "arrests," "malicious arrests." We have in the books "malicious prosecution." We have in the books, "false imprisonment," and yet they are not alike. They are all different. Our state has required, as a condition precedent to any trial, and any legal trial whatever, that there be filed against the party an affidavit, and we think that that is the beginning of a prosecution in a case of this kind. Malicious arrest is, in many cases at least, entirely a different and separate cause of action from that of malicious prosecution ; and we find several cases where they have been joined together, where the party has two separate and distinct causes of action ; and while no court that we have seen has ruled distinctly upon that, yet it is so treated throughout the case by counsel and attorneys ; and that, too, under the common law, without any statute regulating the matter.

We think that the court erred in refusing to give this request. The first question that I have considered, and bearing upon this somewhat also, has undergone a considerable discussion in the books. There was a time when such evidence as was ruled out of here would not have been admitted, but there is a case discussed by Judge Redfield in *Barron* v. *Mason*, 31 Vermont, 201, in which evidence such as ruled out in this case was thoroughly considered and admitted as proper evidence; and while Judge Redfield considered the general rule to be against it, yet he seemed to find enough in this case to hold the rule that the evidence was proper in that case. Since that, we find that a number of courts have ruled upon like testimony, and the rule laid down by Judge Redfield is the one that is now quite universally followed where the question arises.

I read from the case of *Pullen* v. *Glidden*, in 68 Maine, 559, which is only one of a number of cases which I have examined :

" Here, however, the precise question is whether evidence of common repute in the neighborhood that the plaintiff was guilty of the particular offense for which he was prosecuted, was rightfully received."

Then, referring to Judge Redfield's opinion, he said :

" Emphatically that such evidence ought to be regarded as one proof, though not a sufficient one in itself, of probable cause. We think he was right. Not only the facts which the defendant knew, but the information he had received, in fine, the circumstances under which he acted, even his own consultations with counsel learned in the law, if he took the advice of such, are competent evidence upon these questions of probable cause and malice in fact."

There is much more of it, but that is all that is necessary to read. I wish to say that the very question here, among many other things, is discussed by Judge Redfield in the rejection of this evidence; and that is one of the cases where he held contrary to the current of authorities at that time, that the evidence should have been admitted, and that it was proper evidence in a case of this kind, and that rule has been followed. And then I read this case also in regard to the fact that such evidence is competent evidence upon this question of probable cause and malice. Some courts hold that it is a complete defense; others hold that it is not. This is an authority that holds that it is competent evidence upon this question, and that is all of this request asked for by counsel. And we think it was improperly ruled out, and for these two errors the case is reversed and remanded for further proceedings.

*Norton, Phillips, Ford* and *Crowl*, Attorneys for Plaintiff in Error.

*H. J. Ewing* and *A. H. Atwater*, Attorneys for Defendant in Error.